■ 200 GENESEE ST. CORP., Appellant, v CITY OF UTICA et al., Respondents. [798 NYS2d 814]—

Appeal from a judgment (denominated order) of the Supreme Court, Oneida County (Anthony F. Shaheen, J.), entered November 28, 2004. The judgment, insofar as appealed from, granted the motion of defendants City of Utica and Utica Parking Authority for summary judgment dismissing the complaint against them and denied plaintiff's cross motion for summary judgment in a declaratory judgment action.

It is hereby ordered that the judgment insofar as appealed from be and the same hereby is reversed on the law without costs, the motion is denied, the complaint against defendants City of Utica and Utica Parking Authority is reinstated, the cross motion is granted, and judgment is granted in favor of plaintiff as follows:

It is adjudged and declared that plaintiff is entitled to 235 covered parking spaces.

Memorandum: Plaintiff commenced this action seeking a declaration that, pursuant to its 1979 parking agreement with defendant City of Utica (City), plaintiff is entitled to 235 "covered" parking spaces. We agree with plaintiff that Supreme Court erred in granting the motion of the City and defendant Utica Parking Authority for summary judgment dismissing the complaint against them on the ground that "the clear and

unambiguous terms" of the parking agreement do not entitle plaintiff to that relief. Rather, we conclude that the court should have granted plaintiff's cross motion for summary judgment. We therefore reverse the judgment insofar as appealed from and grant judgment in favor of plaintiff.

In 1979 plaintiff and the City entered into a 35-year parking agreement just prior to the construction of the original garage, pursuant to which plaintiff was to receive 235 spaces in the garage "to be constructed." The parking agreement identified the garage as "containing 400 parking spaces" and, although the parking agreement did not describe the parking spaces as "covered," all of the parking spaces in that garage were in fact covered spaces. The garage was expanded in 1986 to include an uncovered floor of parking. In 2003 the City entered into a series of contracts for covered spaces with other entities, and it became impossible for plaintiff to continue to be provided with access to 235 covered parking spaces on a daily basis. When the garage was built it was the subject of a federal urban development action grant awarded to the City as part of an integrated hotel and parking complex, and the grant was specifically referenced in the parking agreement.

"When interpreting contracts, we [must apply] the 'familiar and eminently sensible proposition of law . . . that, when parties set down their agreement in a clear, complete document, their writing should . . . be enforced according to its terms' . . . . [T]his rule's special import [has been emphasized] 'in the context of real property transactions, where commercial certainty is a paramount concern, and where . . . the instrument was negotiated between sophisticated, counseled business people negotiating at arm's length' . . . . In such circumstances, 'courts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include' " (*Vermont Teddy Bear Co. v 538 Madison Realty Co.*, 1 NY3d 470, 475 [2004]).

Here, the parking agreement provides that plaintiff is entitled to 235 of the 400 parking spaces in the original garage. The fact that the parking agreement did not describe the spaces as "covered" is of no consequence, inasmuch as the parking agreement specifies that the location of the parking spaces is in the original garage "to be constructed," and all of those parking spaces were covered spaces. Although we recognize that the parking agreement does not allocate a specific location for the 235 parking spaces referred to therein, we note that the parking agreement nevertheless reserves for plaintiff 235 parking spaces in the 400-space garage that is the subject of the parking agree-

ment and the federal grant, all of which spaces were covered spaces.

All concur except Green and Lawton, JJ., who dissent and vote to modify in accordance with the following memorandum:

Green and Lawton, JJ. (dissenting). We respectfully dissent because we cannot agree with the majority that plaintiff is entitled to a declaration that, pursuant to its 1979 parking agreement with defendant City of Utica (City), plaintiff is entitled to 235 "covered" parking spaces. There is no reference to the term "covered parking spaces" in the parking agreement, but the agreement expressly provides that "[t]here shall not be any reserving or allocating of spaces for Hotel use," i.e., for the use of plaintiff's "Hotel guests and patrons." Under the majority's holding, however, this Court is doing just that, by allocating to plaintiff's hotel guests and patrons 235 covered parking spaces of the total available 550 parking spaces, only some of which are covered. Had plaintiff wanted to ensure that its unallocated parking spaces were limited to covered spaces, it should have so provided in the parking agreement. We would therefore modify the judgment by denying that part of the motion of the City and defendant Utica Parking Authority for summary judgment dismissing the complaint against them and by granting judgment in their favor declaring that plaintiff is not entitled to 235 covered parking spaces. Present—Pigott, Jr., P.J., Green, Gorski, Pine and Lawton, JJ.